UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

STEPHEN J. HARRIS,                    )
                                      )    No. CV-09-311-JPH
              Plaintiff,              )
                                      )
v.                                    )    ORDER GRANTING DEFENDANT'S
                                      )    MOTION FOR SUMMARY
MICHAEL J. ASTRUE,                    )    JUDGMENT AND DENYING
Commissioner of Social Security,      )    PLAINTIFF'S MOTION FOR
                                      )    SUMMARY JUDGMENT
              Defendant.              )
                                      )
                                      )
_____      )

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 17, 25.) Attorney Rebecca M Coufal represents plaintiff; Special Assistant United States Attorney Terrye E. Shea represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 9.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** plaintiff's Motion for Summary Judgment and **GRANTS** defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff Stephen J. Harris (plaintiff) protectively filed for social security income (SSI) and disability insurance benefits (DIB) on April 12, 2007. (Tr. 124, 127, 139.) Plaintiff alleged an onset date of November 25, 2005. (Tr. 124, 127.) Benefits were denied initially and on reconsideration. (Tr. 89, 97.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Gene Duncan on December 17, 2008. (Tr. 27-84.) Plaintiff was represented by counsel and testified at the hearing. (Tr.28-31, 55-64.) Medical expert Dr. Ronald M. Klein, vocational expert Sharon Welter and plaintiff's girlfriend, Tracy Jenks, also testified. (Tr.31-55, 64-69, 74-82.) The ALJ denied benefits

(Tr. 8-24) and the Appeals Council denied review.  (Tr. 1.)  The matter is now before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was born on October 8, 1965 and was 41 years old at the time of the hearing.  (Tr. 407.) He testified he went to school through the eighth grade and reported obtaining his GED.  (Tr. 28, 201, 401.)  Plaintiff has vocational training in automotive work and heavy equipment operation.  (Tr. 28.)  He has work experience as an asbestos remover, machine operator, and parts driver.  (Tr. 146.)  Plaintiff testified the primary condition that keeps him from working is seizures.  (Tr. 30.)  He testified his seizures are caused by three head injuries from motorcycle accidents.  (Tr. 31.)  He  has arthritis in his back and knee and depression.  (Tr. 62, 144.)  He testified he was let go from his last job because of seizures.  (Tr. 30.)

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler,* 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877

1    F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

2        It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402

3    U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its

4    judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579

5    (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the

6    proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v.*

7    *Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial

8    evidence to support the administrative findings, or if there is conflicting evidence that will support a

9    finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v.*

10    *Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

11                              **SEQUENTIAL PROCESS**

12        The Social Security Act (the "Act") defines "disability" as the "inability to engage in any

13    substantial gainful activity by reason of any medically determinable physical or mental impairment which

14    can be expected to result in death or which has lasted or can be expected to last for a continuous period

15    of not less than twelve months."  42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A).  The Act also provides

16    that a plaintiff shall be determined to be under a disability only if his impairments are of such severity

17    that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education

18    and work experiences, engage in any other substantial gainful work which exists in the national economy.

19    42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical

20    and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

21        The Commissioner has established a five-step sequential evaluation process for determining

22    whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he or she is

23    engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities,

24    benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

25        If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step

26    two and determines whether the claimant has a medically severe impairment or combination of

27    impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant does not have a severe

28    impairment or combination of impairments, the disability claim is denied.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

However, a finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001.) When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

If drug or alcohol addiction is a material factor contributing to the disability, the ALJ must

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

1   evaluate which of the current physical and mental limitations would remain if the claimant stopped using

2   drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20

3   C.F.R. §§ 404.1535(b)(2), 416.935(b)(2)

4                                       **ALJ'S FINDINGS**

5           At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in

6   substantial gainful activity since November 25, 2005, the alleged onset date. (Tr. 11.) At step two, he

7   found Plaintiff has the following severe impairments: seizures, epileptic and/or alcohol related;

8   polysubstance addiction disorder; personality disorder, not otherwise specified; and depressive disorder.

9   (Tr. 11.) At step three, the ALJ found that plaintiff's impairments, including the substance use disorders,

10  meet sections 12.04 and 12.09 of 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 13.)

11          Because the record contains evidence of substance abuse, the ALJ next determined if plaintiff

12  stopped the substance use, plaintiff would continue to have the following severe impairments: depressive

13  disorder, personality disorder and seizure disorder, whether or not caused by alcohol usage.  The ALJ

14  concluded that if plaintiff stopped the substance use, he would not have an impairment or combination

15  of impairments that meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App.

16  1. (Tr. 14.) The ALJ then determined that if plaintiff stopped the substance use:

17              [C]laimant would have the residual functional capacity to perform light
                work[] as defined in 20 CFR 404.1567(b) and 416.967(b) except the
18              claimant could occasionally climb, balance, stoop, kneel, crouch and
                crawls but would need to avoid heights, dangerous machinery, operating
19              a motorized vehicle, access to drugs or alcohol, being in charge of the
                safety of others, walking more than one block on uneven terrain, and
20              climbing ladders, ropes and scaffolding.  In addition, the claimant could
                have no public contact and only superficial contact with co-workers.  The
21              claimant would need to be supervised 3 to 4 times a day, preferably would
                need to work independently in work with no fast paced production
22              standards, could not make any business decisions, and would be off task
                an average of 3% of the day.  Lastly, the claimant would be absent from
23              work for 4 hours per month for medical appointments.

24  (Tr. 16.) At step four, the ALJ found that even if plaintiff stopped the substance use, he would be unable

25  to perform past relevant work.  (Tr. 22.) Based on plaintiff's age, education, work experience, residual

26  functional capacity and the testimony of a vocational expert, the ALJ determined that if plaintiff stopped

27  the substance use, there would be a significant number of jobs in the national economy that the claimant

28  could perform.  (Tr. 22.) The ALJ found that because plaintiff would not be disabled if he stopped the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

substance use, plaintiff's substance use disorder is a contributing factor material to the determination of disability.  (Tr. 23.)  As a result, the ALJ concluded plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date  through the date of the decision.  (Tr. 23.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Specifically, plaintiff asserts the ALJ erred by: (1) failing to properly determine plaintiff's severe impairments; (2) failing to develop the record; and (3) improperly assessing the psychological evidence.  (Ct. Rec. 18 at 12-20.)  Defendant asserts the ALJ: (1) cited substantial evidence in making the step two finding; (2) was not required to obtain testimony from a neurologist; and (3) properly assessed the medical and psychological opinions.  (Ct. Rec. 26 at 6-19.)

**DISCUSSION**

**1.      Step Two**

Plaintiff argues the ALJ should have determined that plaintiff's neck and low back pain and left knee problems are severe impairments.   At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c).  To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908.  The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549050 (9th Cir. 1985).

The Commissioner has passed regulations which guide dismissal of claims at step two.  Those regulations state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." S.S.R. 85-28.  The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*,

482 U.S. 137, 153-54 (1987).  "The severity requirement cannot be satisfied when medical evidence

shows that the person has the ability to perform basic work activities, as required in most jobs."

S.S.R. 85-28.  Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling,

reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and

remembering simple instructions; responding appropriately to supervision, coworkers and usual work

situations; and dealing with changes in a routine work setting."  *Id.*

Further, even where non-severe impairments exist, these impairments must be considered in

combination at step two to determine if, together, they have more than a minimal effect on a

claimant's ability to perform work activities.  20 C.F.R. § 416.929.  If impairments in combination

have a significant effect on a claimant's ability to do basic work activities, they must be considered

throughout the sequential evaluation process.  *Id.*  As explained in the Commissioner's policy ruling,

"medical evidence alone is evaluated in order to assess the effects of the impairments on ability to do

basic work activities."  S.S.R. 85-28.  Thus, in determining whether a claimant has a severe

impairment, the ALJ must evaluate the medical evidence.

The ALJ concluded there is little evidence to support a finding of a severe musculoskeletal

impairment of the low back.  (Tr. 12.)  Despite reporting a history of chronic neck and lower back

pain to a treating provider in April 2007, plaintiff stated that was not the purpose of his office visit

and he currently had no complaints.  (Tr. 331.)  On examination, plaintiff had mild pain with motion

and mildly reduced range of motion, but it was noted that testing suggested non-organic causes of

symptoms.  (Tr. 334.)  Plaintiff was observed to have a normal gait and was able to get up and off of

the exam table without difficulty.  (Tr. 334.)  In April 2008, x-rays of plaintiff's spine and knee

revealed mild arthritis and plaintiff was referred to physical therapy.  (Tr. 467, 482.)  The ALJ

observed plaintiff's back and knee conditions are mild and there is no evidence that they would

significantly impact plaintiff's ability to perform work-related activities.  (Tr. 12-13.)  Plaintiff failed

to point to any evidence of a significant impact on plaintiff's ability to perform work-related

activities.  Pain complaints alone do not establish a severe impairment.  *See* 20 C.F.R. § 416.908.  As

a result, the ALJ properly concluded the impairments are not severe.

Even if the ALJ should have identified plaintiff's back and knee pain as severe impairments,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -7

any error is harmless.  As long as there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination, the error is harmless.   *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).  Plaintiff's treating physician, Dr. Bassler, opined in March 2008 that plaintiff's lumbar pain creates a moderate impairment and his leg pain supports a mild impairment.  (Tr. 419.) Dr. Bassler opined plaintiff could perform light work despite such impairments.[1]  (Tr. 419.)  Because the RFC finding is based on the ability to do light work, any error in failing to include plaintiff's lumbar pain or leg pain as severe impairments is harmless and would not affect the RFC or ultimate nondisability finding.

## 2.        Duty to Develop the Record

Plaintiff argues the ALJ failed to properly develop the record regarding plaintiff's seizures. (Ct. Rec. 18 at 16-18.)  In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983).  The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination.  20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. 404.1519a.  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998).  An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is

---

[1]The ALJ discussed the portion of Dr. Bassler's assessment regarding seizures and assigned less weight to the opinion.  (Tr. 20-21.)  Plaintiff does not challenge the ALJ's consideration of Dr. Bassler's opinion.  Nonetheless, Dr. Bassler is the only physician who specifically assessed plaintiff's work-related limitations with respect to his knee and back complaints and her opinion is consistent with the RFC, assuming for the sake of argument that the ALJ should have included them as severe impairments.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

inadequate to allow for proper evaluation of the evidence.  *Tonapetyan*, 242 F.3d at 1150.

Without citing any authority or addressing the factors cited by the ALJ in assessing plaintiff's seizures, plaintiff seems to argue it was error as a matter of law to fail to call a neurologist to testify about plaintiff's seizures.[2]  (Ct. Rec. 18 at 16-18.)  However, the ALJ thoroughly discussed the record regarding plaintiff's seizures and there is no ambiguity in the evidence.  (Tr. 11, 13, 18-19.)  Notably, the ALJ discussed the findings of plaintiff's neurologist, Dr. Brondos.  (Tr. 11.)  Dr. Brondos conducted neurological testing in July 2007 and found no clear-cut etiology for plaintiff's seizures.  (Tr. 326-27.)  Despite normal neurological studies and other laboratory studies showing no significant abnormality, Dr. Brondos continued Dilantin for seizures.  (Tr. 326-27.)  Plaintiff continued to receive prescriptions for Dilantin based on reported seizures and symptoms when he intermittently sought treatment.  (Tr. 11, 328-55, 467-80.)  The ALJ noted plaintiff alleged compliance with anti-seizure medication while the record reflects several instances where plaintiff reported going off medication or bloodwork revealed low medication levels.  (Tr. 19, 328, 342, 346, 418-19, 474.)  Plaintiff reported things had "turned around" once he was back on medication.  (Tr. 19, 466.)  Despite a lack of objective medical findings supporting plaintiff's seizure condition, and despite evidence suggesting plaintiff has not been compliant with his medication, the ALJ included seizure-related precautions in the residual functional capacity finding.  (Tr. 16, 19.)  There is no credible evidence of seizure-related limitations other than those identified by the ALJ, and the evidence is not ambiguous in this regard.

Plaintiff also suggests the ALJ improperly relied on Dr. Klein's testimony in assessing the cause and effects of plaintiff's seizures instead of seeking expert testimony from a neurologist.  (Ct. Rec. 18 at 16-18.)  In discussing the psychological evidence, Dr. Klein testified about plaintiff's past psychiatric hospitalizations.  (Tr. 32-33.)  Dr. Klein noted a third psychiatric hospitalization:

He had seizures, but the EEG found only slightly positive findings.  And he was

---

[2]Plaintiff cites "a different case" in which a psychologist opined about the negative effects marijuana use would have on a person suffering from epilepsy, and a neurologist also appeared and said marijuana use made no difference one way or another.  (Ct. Rec. 18 at 17.)  Obviously, no precedential or persuasive weight can be given to an anecdotal citation to an unidentified case.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

apparently – the seizure was apparently after taking Ant[a]buse.  I hope the record would be a bit more clear that the seizure was in fact precipitated by drinking alcohol on top of taking the Ant[a]buse.  It doesn't give us that clear a record, but that – clinically, that's would you would expect the sequence to have been.  So I guess it's not fully documented there.

(Tr. 33.)  Dr. Klein pointed out that plaintiff's neurologist, Dr. Brondos, did not note alcohol abuse, especially since it was so chronic, "which would be a fairly common pathway for a seizure disorder to be, A, started, and B, exacerbate." (Tr. 35.)  Dr. Klein also observed that seizures could reasonably be expected when intermittently drinking notable levels of alcohol. (Tr. 38-39.)  Dr. Klein opined that alcohol is a contributing factor material to impairment. (Tr. 41.)  He also stated that if plaintiff stopped drinking "the likelihood of his having seizures would greatly diminish . . . it is possible for one to be controlled on meds if you're not also drinking.  Allowing for the fact that there is variation in neurologists' ability to control seizure disorders with currently available anti-convulsant medication." (Tr. 42.)

While the ALJ gave significant weight to Dr. Klein's opinion, he considered the medical evidence in evaluating plaintiff's seizures.  The ALJ did not mention or discuss Dr. Klein's testimony with respect to the physical aspect of plaintiff's seizures except in summarizing Dr. Klein's testimony and concluding that plaintiff has severe impairments. (Tr. 11.)  However, the ALJ also found that whether or not plaintiff's seizure disorder was caused by alcohol usage, it was a severe impairment. (Tr. 14-15.)  The ALJ found plaintiff's seizure disorder is not a listed impairment without regard to Dr. Klein's testimony. (Tr. 15.)  The ALJ discussed substantial evidence indicating plaintiff's seizure disorder is likely related to alcohol use without mentioning Dr. Klein's testimony. (Tr. 18-19.)  Additionally, despite the foregoing, the ALJ assessed some seizure-related limitations in the residual functional capacity finding.

Even assuming Dr. Klein's statement exceeded the scope of his expertise, and further assuming the ALJ relied on Dr. Klein's testimony in assessing plaintiff's seizure disorder, any error is harmless.  Harmless error only occurs if the error is inconsequential to the ultimate nondisability determination.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).  Plaintiff's implicit argument is that his seizure disorder is disabling without regard to the effects of substance abuse, notwithstanding

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

plaintiff's failure to challenge the finding of polysubstance addiction disorder.  Once evidence of drug and alcohol abuse is presented, plaintiff bears the burden of establishing his drug or alcohol condition is not a contributing factor material to disability.  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). Plaintiff's argument that the ALJ was required as a matter of law to obtain testimony from a neurologist attempts to shift the burden to the ALJ and is without merit.  The ALJ cited a number of specific factors supporting his findings regarding plaintiff's seizure disorder and did not rely on Dr. Klein's testimony.  The ALJ's duty to develop the record was not triggered by the failure to seek testimony from a neurologist or medical expert since the evidence was not ambiguous and the ALJ was able to make findings properly supported by substantial evidence.

**3.    Dr. Dalley**

Plaintiff argues the ALJ erred by giving more weight to the opinion of Dr. Klein, the medical expert, than to Dr. Dalley, an examining psychologist.  (Ct. Rec. 18 at 19.)  In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician.  *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or examining  physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion.  *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995);  *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990).  However, the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31. Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

The record contains three psychological assessments from Dr. Dalley.[3]  In a report dated May 10, 2007, Dr. Dalley diagnosed alcohol dependence, early full remission by client report; major depressive disorder, recurrent, moderate; rule out malingering; and antisocial personality disorder and assessed a GAF of 55.[4]  (Tr. 315-21.)  Dr. Dalley rated plaintiff's depressed mood, social withdrawal, physical complaints, suicidal trends and global illness as moderate.  (Tr. 320.)  Dr. Dalley also completed a DSHS Psychological/Psychiatric Evaluation form.  (Tr. 322-25.)  He assessed one moderate cognitive limitation and three marked and two severe social limitations.  (Tr. 324.)

Dr. Dalley examined plaintiff again in March 2008 and prepared a report dated April 1, 2008. (Tr. 400-404.)  Dr. Dalley again diagnosed major depressive disorder, recurrent, moderate; alcohol

---

[3]Dr. Dalley's May 10, 2007 report notes a prior evaluation on February 1, 2007, although the February 1, 2007 report is not part of the record.  However, the May 10, 2007 report summarizes the findings of the February 1, 2007 report.

[4]A GAF score of 51-60 indicates moderate symptoms or any moderate impairment in social, occupational or school functioning.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

dependence, sustained full remission by report; and personality disorder NOS with antisocial features by history, and assessed a GAF of 50.[5]  (Tr. 403.)  Plaintiff's mood was rated as marked, while suicidal trends, verbal expression of anxiety or fear, social withdrawal, physical complaints and global illness were all rated as moderate.  (Tr. 403.)  Dr. Dalley opined that plaintiff's current depressive symptoms were likely to have a detrimental effect on his ability to successfully tolerate the pressures and expectations of the workplace.  (Tr. 403.)  On the concurrent DSHS Psychological/Psychiatric Evaluation form, Dr. Dalley assessed one moderate cognitive limitation and two marked and three moderate social limitations.  (Tr. 396-99.)

After an incident on August 18, 2008 involving alcohol use, a fight with his girlfriend and suicide threats, plaintiff underwent a mental health evaluation at a hospital.  (Tr. 393-94.)  Just over a week later, on August 26, 2008, Dr. Dalley prepared another psychological report.  (Tr. 409-13.)  Dr. Dalley again diagnosed major depressive disorder, recurrent, moderate; alcohol dependency, sustained partial remission; rule out malingering; and personality disorder NOS with antisocial features by history, and assessed a GAF of 50.  (Tr. 412.)  Dr. Dalley rated plaintiff's depressed mood, suicidal trends, verbal expression of anxiety or fear, social withdrawal, physical complaints and global illness as moderate.  (Tr. 412.)  On a DSHS Psychological/Psychiatric Evaluation form, Dr. Dalley opined plaintiff had one mild cognitive limitation and three marked and one moderate social limitation.  (Tr. 407.)

Dr. Klein, the medical expert who testified at the hearing, opined that plaintiff's primary issue is that he is a serious problem drinker.  (Tr. 39.)  Dr. Klein identified four areas in which plaintiff has a moderate limitation: in the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or proximity to others without being distracted by them, the ability to interact appropriately with the general pubic, and the ability to accept instructions and respond appropriately to criticism from supervisors.  (Tr. 39.)  Dr. Klein's testimony contradicts Dr.

---

[5]A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

Dalley's assessment that plaintiff has greater limitations. As a result, the ALJ was required to cite specific, legitimate reasons supported by substantial evidence in rejecting Dr. Dalley's opinion.

The ALJ rejected Dr. Dalley's May 2007 opinion because it is internally inconsistent. (Tr. 20.) A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957. The ALJ pointed out that Dr. Dalley's May 2007 narrative report notes moderate findings in the areas of depressed mood, suicidal trend, social withdrawal, physical complaints and global illness. (Tr. 20.) The GAF assessment of 55 also indicates a moderate impairment. (Tr. 20.) However, the DSHS evaluation form indicates several marked limitations, which is inconsistent with the moderate assessments contained in the narrative report. (Tr. 20.) This inconsistency in the assessment of plaintiff's limitations is a specific, legitimate reason for rejecting Dr. Dalley's May 2007 opinion.

The ALJ also gave less weight to Dr. Dalley's March and August 2008 opinions. (Tr. 21.) The ALJ observed that the opinions are based on plaintiff's self-reported symptoms. (Tr. 21.) A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604. The ALJ made a properly supported negative credibility finding, which is not challenged by plaintiff.[6] (Tr. 18-20.) As a result, the ALJ properly rejected an opinion based primarily on plaintiff's

---

[6]If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 599, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted). The ALJ discussed plaintiff's credibility in detail and provided clear and convincing reasons supported by

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

self-report.  The ALJ observed that Dr. Dalley's opinion that plaintiff had marked limitations in his ability to interact with the public and in the ability respond appropriately to and tolerate the pressures and expectations of a normal work setting are based on plaintiff's report of being socially isolated due to fears of having seizures.  (Tr. 21, 403.)  Additionally, with respect to the August 2008 opinion, the ALJ pointed out that although plaintiff was cautioned against exaggerating his psychological symptoms, his MMPI-2 results were invalid for the third time in a row due to "significant over reporting of symptoms."  (Tr. 21, 411-12.)   Dr. Dalley also reported that plaintiff's results on the MACE test to assesses memory malingering are indicative of memory malingering.  (Tr. 21, 412.) The ALJ noted that despite evidence of probable malingering, Dr. Dalley continued to assess marked social limitations.  (Tr. 21, 407.)  The ALJ's assessment of Dr. Dalley's opinion is a reasonable interpretation of the evidence and constitutes specific, legitimate reasons for rejecting the opinions.

In addition to the foregoing, the ALJ discussed the testimony of Dr. Klein.  (Tr. 19-20.)  Dr. Klein testified that the overall psychological testing results reported by Dr. Dalley indicate plaintiff purposefully exaggerated his psychological symptoms in an attempt to appear more impaired.  (Tr. 20, 44-45.)  Although plaintiff argues it is "clearly error" to assign more weight to Dr. Klein's opinion than to Dr. Dalley's opinions, plaintiff does not address the ALJ's reasons for rejecting Dr. Dalley's opinions or cite any evidence undermining the ALJ's findings.  The ALJ cited substantial evidence in addition to Dr. Klein's testimony as specific, legitimate reasons for assigning less weight to Dr. Dalley's report .  *See Andrews*, 53 F.3d at 1039.  As a result, the ALJ did not err.

substantial evidence in making the credibility determination.  (Tr. 18-20.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment **(Ct. Rec. 25)** is **GRANTED.**

2.      Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant.  Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED February 25, 2010


                                    S/ JAMES P. HUTTON
                              UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -16